# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:13-cv-00053-MR-DLH

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>JAMES E. MacALPINE, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the following motions:

(1) Plaintiff's Motion for Summary Judgment [Doc. 9];

(2) Defendant's Motion for Leave of Court to File a Counterclaim [Doc. 19];

(3) Defendant's Motion for Trial by Jury [Doc. 20];

(4) Defendant's Motion to Strike (Disregard) Document Filed on March 18th, 2014 [Doc. 24]; and

(5) Defendant's Motion for Leave of Court to File a Surreply [Doc. 25].

## I. PROCEDURAL BACKGROUND

The Government initiated this action on February 28, 2013, seeking to reduce to judgment several assessments for income taxes, penalties,

and interest against the Defendant James E. MacAlpine ("MacAlpine"). [Doc. 1]. These assessments concern MacAlpine's income tax liability for the 1999, 2000, 2002, 2003, 2004, 2005, and 2006 tax years.

On September 30, 2013, the Government filed the present motion for summary judgment. [Doc. 9]. On October 31, 2013, the Court entered a Roseboro Order[1] advising MacAlpine of his burden in responding to the Government's motion for summary judgment. [Doc. 10]. On October 31, 2013, MacAlpine filed a response in opposition to the Government's motion which was 58 pages in length, significantly above the 25-page limit set by Local Civil Rule 7.1 and the Court's Pretrial Order and Case Management Plan. [Doc. 12]. He simultaneously sought leave to file an "over length" brief, citing the need to "lay a proper foundation of law in the intricate issues" of the case. [Doc. 11 at 1]. The Court denied MacAlpine's request and directed him to file a brief in conformity with the Court's page limit requirements. [Doc. 13]. Thereafter, MacAlpine filed an amended

---

[1] This Order was issued pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), which by its terms applies only to the notice to which a prisoner is entitled when the Government moves for summary judgment in a § 1983 action. While the Fourth Circuit has never applied Roseboro outside of the context of prisoner litigation, see Amzura Enters., Inc. v. Ratcher, 18 F. App'x 95, 105 n.11 (4th Cir. 2001), the Court nevertheless provided the Defendant with a Roseboro notice in this matter out of an abundance of caution.

2

opposition to the Government's motion for summary judgment on November 18, 2013. [Doc. 16].

On February 28, 2014, this Court held a hearing on the Plaintiff's Motion for Summary Judgment. At the conclusion of the hearing, the Court allowed MacAlpine one week, or until the following Friday, March 7, 2014, to submit an additional response to the Government's motion. The Court further instructed the Government to file any response to MacAlpine's additional filing by the following Friday, March 14, 2014.

MacAlpine filed a pleading entitled "Additional Objection" on March 7, 2014 [Doc. 21], followed by a pleading entitled "Errata – Additional Objection" on March 10, 2014 [Doc. 18].[2] The Government filed a response to MacAlpine's "Additional Objection" on March 18, 2014. [Doc. 22].

On March 7, 2014, MacAlpine also filed a motion for leave of court to file a counterclaim [Doc. 19] and a motion for trial by jury [Doc. 20].

On March 24, 2014, MacAlpine filed a motion to strike the Government's response to his "Additional Objection" as being untimely.

---

[2] This "errata" filing appears to be largely identical in substance to MacAlpine's March 7th filing, but does correct some typographical errors.

[Doc. 24]. Two days later, on March 26, 2014, MacAlpine filed a motion seeking leave to file a surreply to the Government's response. [Doc. 25].

This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News and Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist, as follows:

> A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

Id. at 522 (internal quotation marks and citations omitted). In considering the facts for the purposes of a summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

### III. FACTUAL BACKGROUND

The Internal Revenue Service ("IRS") has presented the certified transcripts concerning MacAlpine's 1999, 2000, 2002, 2003, 2004, 2005, and 2006 tax years. [Doc. 9-2]. These transcripts set forth the IRS's records concerning assessments of tax, interest and penalties it made regarding those tax years as well as payments and credits applied to those

5

assessments. Based on these certified transcripts, IRS revenue officer Angela Allen calculates MacAlpine's tax liability, including penalties and interest, to be as follows as of August 1, 2013:

| Tax Year | Assessment Date | Assessed Tax | Assessed Penalty and Interest | Accrued Interest to 8/1/2013 | Payments and Credits | Total |
|---|---|---|---|---|---|---|
| 1999 | 12/24/01 | $ 39,064.00 | $ 27,642.68 | $ 51,376.64 | ($12,332.67) | $ 105,750.65 |
| 2000 | 12/31/01 | 38,558.00 | 22,907.19 | 47,210.94 | ----------------- | 108,676.13 |
| 2002 | 12/08/03 | 82, 295.00 | 50,243.76 | 35,841.91 | (20,191.00) | 148,189.67 |
| 2003 | 12/06/04 | 81,452.00 | 59,820.87 | 34,191.02 | (7,718.00) | 167,745.89 |
| 2004 | 11/21/05 | 147,521.00 | 52,701.30 | 75,828.75 | (33,288.00) | 242,763.05 |
| 2005 | 3/05/07 | 197,962.00 | 139,982.35 | 75,894.05 | (6.00) | 413,832.40 |
| 2006 | 7/16/07 | 295,956.00 | 350,729.28 | 128,757.04 | (46.00) | 775,396.32 |

[Declaration of Angela Allen ("Allen Decl."), Doc. 9-1]. Thus, as of August 1, 2013, MacAlpine was indebted to the Government in the total amount of $1,962,354.11 with respect to the 1999, 2000, 2002, 2003, 2004, 2005, and 2006 tax years.[3] [Id. at ¶3].

As reflected in the certified transcripts, MacAlpine's federal tax liabilities for his 1999, 2000, 2002, 2003, and 2004 tax years are based upon income tax deficiencies the IRS determined after examining his filed income tax returns for those years.[4] MacAlpine did not file income tax returns for his 2005 and 2006 tax years. His federal tax liabilities for those

---

[3] Allen erroneously states in her Declaration that the sum total of MacAlpine's liability for these tax years as of August 1, 2013 was $1,962,404.11.

[4] In part, the Government determined that MacAlpine was not entitled to claim certain business expenses he reported on his income tax returns for these years.

6

years are based upon the IRS's determination of his income tax liabilities. [Id. at ¶4].

The Government served MacAlpine with discovery to attempt to ascertain what evidence MacAlpine has in his possession that could contradict the IRS's determinations of his income tax deficiencies from his 2002 through 2006 tax years. In response, MacAlpine provided no factual basis for disputing the IRS's determinations. For example, the Government requested that MacAlpine produce documents substantiating his claimed business expenses. MacAlpine responded that he had no such documents. [Defendant's Responses to Interrogatories, Doc. 9-4].

## IV. DISCUSSION

### A. Government's Motion for Summary Judgment

In a tax collection action, "the issue is whether the Government is entitled to what it has assessed. The presumption of administrative regularity, the need to encourage taxpayers to keep records, and the governmental interest in facilitating the collection of taxes justify requiring the taxpayer to pay what the Government asks unless he can prove that the Government's assessment is excessive." Higginbotham v. United States, 556 F.2d 1173, 1175 (4th Cir. 1977). A certificate of assessments and payments is proof that tax assessments were actually made and

establishes a *prima facie* case of taxpayer liability. <u>United States v. Pomponio</u>, 635 F.2d 293, 296 (4th Cir. 1980); <u>Psaty v. United States</u>, 442 F.2d 1154, 1159 (3d Cir. 1971).

In the present case, the Government has presented certificates of assessments and payments as proof that assessments of income tax, penalties and interest were made against MacAlpine with respect to the tax years at issue. Having established a *prima facie* case of liability, the burden is on MacAlpine to establish that the IRS's determination was erroneous. To meet this burden, MacAlpine may not rely on a general denial or self-serving, uncorroborated oral testimony. <u>See</u> <u>Liddy v. Commissioner</u>, 808 F.2d 312, 315 (4th Cir. 1986).

MacAlpine has presented no forecast of evidence to dispute the Government's assessments for MacAlpine's tax liabilities.[5] At the hearing

---

[5] MacAlpine attached the following to his objection: (1) Attachment A, Complaint in <u>United States of America v. Kegley et al.</u>, CV-13-5053-EFS, in the Eastern District of Washington [Doc. 16-2]; (2) Attachment B, Complaint in <u>United States of America v. Kuglin et al.</u>, 2:11-CV-02741-SHM-tmp, in the Western Division for the Western District of Tennessee [Doc. 16-3]; (3) Attachment C1, MacAlpine's letter dated October 25, 2013 to Ms. Allen with questions regarding the Summons he received [Doc. 16-4]; (4) Attachment C2, the Declaration of Angela Allen [Doc. 16-5]; (5) a highlighted version of the United States' Brief in Support of Its Motion for Summary Judgment [Doc. 16-6]; (6) the Complaint against MacAlpine [Doc. 16-7]; (7) Attachment D, Complaint in <u>United States of America v. Springer et al.</u>, 08-CV-278-TCK-PJC, in the Northern District of Oklahoma [Doc. 16-8]; (8) Attachment E, Complaint in <u>United States of America v. Stevens et al.</u>, 3:13-CV-375-HES-JBT, in the Jacksonville Division of the Middle District of Florida [Doc. 16-9]; (9) Attachment H, portions of the Code of Federal Regulations relating to Title 26 of the United States Code [Doc. 16-10]; (10) Attachment I,

regarding this motion for summary judgment on February 28, 2014, MacAlpine admitted that he did receive funds from healthcare services he provided as an orthodontist during the years at issue in this case. MacAlpine argues, however, that there is no authority within the Internal Revenue Code to require him to pay income taxes to the Government. He claims that the plain language of the Title 26 statutes exempts him from tax liability, particularly since he is not within the definition of a "withholding agent" according to 26 U.S.C. § 7701(a)(16). [Doc. 16 at 14-15]. MacAlpine further asserts that he is not a Subtitle A entity with a "taxable year" liability and that the Government has no evidence to plead that he is indeed a "taxpayer" owing taxes for the years at issue. [Doc. 16 at 11, 14-15].[6]

---

Memorandum on Cases of Form 4340 [Doc. 16-11]; and (11) Attachment J, entitled "Agencies Must Disclose Its Power to Act" [Doc. 16-12]. None of these attachments serve as evidence to dispute the Government's factual allegations in this case, as required by Rule 56, and as MacAlpine was informed in his Roseboro notice.

Further, although MacAlpine stated at the end of his argument on February 28, 2014 that there are factual discrepancies regarding the numerical figures of the Government's assessments, he presented no evidence whatsoever to dispute any of these assessed amounts.

[6] Although MacAlpine's arguments are largely incoherent, they bear substantial similarities to the arguments made online at www.tax-freedom.com (last visited April 3, 2014), especially with regard to the portions of his arguments relating to withholding agents. Included in this website is an article entitled "The Truth About the Income Tax" which appears to argue that the income tax was authorized by the Tariff Act of October 3, 1913 and therefore serves only to tax that income that arises from the importation

MacAlpine's arguments in this regard are generally incomprehensible. To the extent that the Court can discern what MacAlpine is actually arguing, his contentions are baseless. Title 26 of the United States Code, otherwise known as the Internal Revenue Code or IRC, provides for the imposition of an income tax on all "taxable income." 26 U.S.C. § 1. "Taxable income" is defined as "gross income minus the deductions allowed by" law. 26 U.S.C. § 63(a). "Gross income" in turn is defined as "all income from whatever source derived, including (but not limited to) . . . [c]ompensation for services[.]" 26 U.S.C. § 61(a)(1). It is undisputed in this case that MacAlpine received income as compensation for services rendered as an orthodontist, and thus he is a "taxpayer" with "taxable income" subject to the imposition of an income tax.

MacAlpine appears to contend that only "withholding agents" are subject to the requirements of the IRC, and because he has not been designated as a withholding agent, he is not subject to tax liability. This argument is simply frivolous. "The term 'withholding agent' is used in the

---

into the United States of goods produced abroad. The argument then continues that the person responsible for collecting such tariff/taxes is designated a "withholding agent" who is a party to the transaction of importation. MacAlpine argues, therefore, that Subtitle A income taxes do not apply to anyone except such withholding agents since a tariff is a tax on foreign activity. A copy of this article is attached to this Order as Exhibit A. Like MacAlpine's arguments, this article is factually and legally baseless and wholly without merit.

Code only in the context of foreign accounts, nonresident aliens, and foreign corporations." Nix v. Comm'r, __ F. App'x __, 2014 WL 400756, at *1 (11th Cir. Feb. 4, 2014) (citing 26 U.S.C. §§ 1473, 7701(a)(16)).[7] While a "withholding agent" has particular duties as stated in the IRC, the Code's applicability is not exclusive to withholding agents. See 26 C.F.R. § 1.1441-7, 26 U.S.C. §§ 1441-1464.

Further, MacAlpine claims that he did not receive proper notice of the IRS's assessments in this case. His claim of deficient notice, however, is premised upon the IRS's alleged failure to create assessment regulations pursuant to 26 U.S.C. § 6203. [See Doc. 1 at 8-9; Doc. 21 at 3-6]. Contrary to MacAlpine's argument, the IRS *has* promulgated regulations concerning assessments. See 26 C.F.R. § 301.6203-1, *et seq*. In addition, the certified transcripts indicate that MacAlpine was given notice of his assessments in accordance with the IRC on the very date that these assessments were conducted. [See Doc. 9-2]. MacAlpine has not presented any forecast of evidence to the contrary.

Finally, MacAlpine attempts to rescind his signatures on his 1999 and 2000 tax returns, claiming that he signed them under duress. [Doc. 16 at

---

[7] In Nix, the Eleventh Circuit recently addressed arguments that appear to be derived from the same web sites as MacAlpine apparently relies on herein for his legal authority.

7]. This argument is frivolous. "A taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents." United States v. Williams, 489 F. App'x 655, 659 (4th Cir. 2012) (citing Greer v. Commissioner of Internal Revenue, 595 F.3d 338, 347 n. 4 (6th Cir. 2010); United States v. Doherty, 233 F.3d 1275, 1282 n. 10 (11th Cir. 2000)). A signature on a tax return is "prima facie evidence" that the signor "knew the contents of the return." Williams, 489 F. App'x at 659 (citing United States v. Mohney, 949 F.2d 1397, 1407 (6th Cir. 1991)). To assert duress successfully, "the taxpayer must produce specific evidence that he or she was indeed overcome by duress at the precise time when the tax return was signed, and that absent such duress, the taxpayer would not have signed the return." United States v. Kramer. 83-2 U.S. Tax Cas. (CCH) P9474, 52 A.F.T.R.2d (RIA) 5630 (D. Md. 1983) (citing Gaynes v. United States, 454 F.2d 1142, 1143 n. 2 (5th Cir. 1972); see also Stanley v. Commissioner, 45 T.C. 555 (1966)). Here, MacAlpine has merely asserted that he "submitted the Form 1040 OMB 1545-0074 under threat, duress and coercion and was uniformed [sic] at the time." [Doc. 16 at 7].[8] Having

---

[8] MacAlpine further contends that these tax returns constituted "implied-in-law" contracts and were therefore "unenforceable under Contract Law as used . . ." [Doc. 16 at 7].

produced no specific forecast of evidence that he was indeed overcome by duress at the time these returns were signed, MacAlpine's claim of duress must be rejected.

As the Government correctly states [Docs. 9-3, 22], MacAlpine's income tax returns for 1999, 2000, 2002, 2003, and 2004 are a sufficient admission that he is liable for taxes for those years. MacAlpine has provided no forecast of evidence to contradict any of the IRS's findings of his income tax deficiencies from 2002-2006. In particular, MacAlpine denies having any documents to verify his reported business expenses for which he had claimed deductions from 2002-2004. [Doc. 9-4, answer to request for documents ¶ 1]. "Under the tax law, the 'burden of clearly showing the right to the claimed deduction is on the taxpayer.'" United States v. Jinwright, 683 F.3d 471, 482 (4th Cir. 2012) (citing INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992)). MacAlpine has not shown any evidence to suggest that he is not liable for the amounts which the IRS has assessed.

---

This argument is nonsensical. While it may be possible that a tax form can imply some contract in the law, MacAlpine has presented no evidentiary forecast to show that may be the case here. MacAlpine submitted 1040 Forms for the purpose of giving notice of his income for the years at issue and presenting the IRS with his assertion of his proper tax liability. This has nothing to do with contract law. The Court will not address this frivolous argument any further.

For the foregoing reasons, the Court concludes that the Government has presented a sufficient forecast of evidence to establish MacAlpine's tax liability for the years at issue in this case, and MacAlpine has presented no forecast of evidence or specific facts to dispute the Government's evidence or to indicate "that a reasonable jury could return a verdict for [him]." Anderson, 477 U.S. at 248. Accordingly, the Court will enter judgment in favor of the Government in the amount of $1,962,354.11, plus statutory interest from August 1, 2013.

**B.    Defendant's Motion to File Counterclaim**

Subsequent to the summary judgment hearing, MacAlpine filed a motion for leave to assert a counterclaim against the Government in order to challenge the IRS's assessments. [Doc. 19].

"A district court has the discretion to deny leave to amend to add a counterclaim 'based upon a balancing of the equities," including whether the proposed amendment is timely and whether allowing the amendment would be unduly prejudicial. Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 440 (4th Cir. 2011) (citation omitted); Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 940 (4th Cir. 1995).

Here, MacAlpine's request to add a counterclaim to challenge the IRS's assessments comes long after the pleadings have closed and after the Government's motion for summary judgment has been fully briefed and argued. It also comes long after the motions deadline set out in the Case Management Order in this matter. Moreover, MacAlpine has failed to offer any forecast of evidence in opposition to the Government's summary judgment motion to suggest that the IRS's income tax assessments are incorrect or that he is otherwise not subject to the imposition of an income tax. For these reasons, the Court denies MacAlpine's request to assert a counterclaim in this action.

### C. Defendant's Motion for Jury Trial

MacAlpine also moves for this action to be tried before a jury. [Doc. 20]. Because the Court is entering summary judgment in favor of the Government, no trial is required in this action. Accordingly, MacAlpine's request for a jury trial is denied as moot.

### D. Defendant's Motion to Strike and Motion to File Surreply

Finally, MacAlpine moves the Court to disregard the Government's March 18, 2014 filing of a response in opposition to his supplemental summary judgment response on the grounds that the Government's filing was untimely. [Doc. 24]. At the summary judgment hearing, the Court

directed the Government to file any response no later than Friday, March 14, 2014. The Government's response was not filed until March 18, 2014 and was therefore untimely. Accordingly, the Court will disregard the Government's filing and will not consider the same in ruling on the Government's summary judgment motion.

Because the Government's response has not been taken into consideration, MacAlpine's request to file a surreply to the response [Doc. 25] is moot.

## O R D E R

**IT IS, THEREFORE ORDERED:**

(1) Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED**, and a judgment shall be entered against the Defendant and in favor of the United States in the amount of $1,962,354.11, plus statutory interest from August 1, 2013;

(2) Defendant's Motion for Leave of Court to File a Counterclaim [Doc. 19] is **DENIED**;

(3) Defendant's Motion for Trial by Jury [Doc. 20] is **DENIED AS MOOT**;

(4) Defendant's Motion to Strike (Disregard) Document Filed on March 18th, 2014 [Doc. 24] is **GRANTED**; and

(5) Defendant's Motion for Leave of Court to File a Surreply [Doc. 25] is **DENIED AS MOOT**.

A Judgment shall be entered contemporaneously herewith.

**IT IS SO ORDERED.**

Signed: April 7, 2014

Martin Reidinger
United States District Judge